IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FEDEX TRADE NETWORKS TRANSPORT & BROKERAGE, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>AIRBOSS DEFENSE GROUP, LLC,<br><br>*Defendant*. | No. 1:23-cv-2232-LKG |
| AIRBOSS DEFENSE GROUP, LLC,<br><br>*Third-Plaintiff*,<br><br>v.<br><br>MEDITERRANEAN SHIPPING COMPANY S.A.,<br><br>*Defendant*. | |

**AIRBOSS DEFENSE GROUP, LLC'S
THIRD-PARTY COMPLAINT**

Defendant and third-party plaintiff AirBoss Defense Group, LLC (ADG) respectfully alleges for its third-party complaint against third-party defendant Mediterranean Shipping Company S.A. (MSC) as follows:

**INTRODUCTION**

1. Plaintiff FedEx Trade Networks Transport & Brokerage, Inc. (FTN) filed a complaint in this Court alleging that ADG partially breached a Settlement Agreement between ADG and FTN and that ADG owes FTN for certain charges that ADG *already settled* with FTN. A copy of FTN's complaint is attached hereto as Exhibit 1. ADG denies that it is liable to FTN.

1

2. To the extent ADG is found liable to FTN, however, it is MSC that is at fault and legally responsible for the circumstances and the damages alleged in FTN's complaint.

3. The ADG-FTN Settlement Agreement included a narrow carveout for ADG to settle certain additional charges (shoreside charges) with MSC. Promptly after settling with FTN, ADG settled with MSC too, resolving the narrow set of remaining charges that had not been settled through the FTN-ADG Settlement Agreement.

4. ADG secured a representation from MSC to that effect—that MSC was the only party in interest with standing to seek recovery of the settled charges. And MSC agreed to defend and indemnify ADG for any breach of that representation. Yet MSC has refused to defend and indemnify ADG from FTN's demands to pay already settled charges.

5. ADG paid FTN and MSC around $11,000,000 to settle all the charges they unreasonably continued to impose after the U.S. Customs and Border Protection (CBP) ordered certain shipping containers detained. Yet neither will stop demanding more money.

6. ADG therefore asks the Court to enter judgment in its favor against the plaintiff FTN on its complaint and against the third-party defendant MSC on this third-party complaint.

## JURISDICTION

7. FTN's complaint alleges that this is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333 and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. ADG denies that such subject-matter jurisdiction exists; to the extent it does, however, subject-matter jurisdiction over ADG's claims against MSC would be proper under 28 U.S.C. § 1367(a).

8. Subject-matter jurisdiction is also proper under 28 U.S.C. § 1332, and this Court has jurisdiction over ADG's claims against MSC under 28 U.S.C. § 1367(b) because the addition of MSC as a party to this case is consistent with the jurisdictional requirements of 28 U.S.C. § 1332.

## THE PARTIES

9. ADG is a Delaware limited liability company with its principal place of business at 8261 Preston Court, Jessup, Maryland 20794. ADG's sole member is AirBoss Defense Group, Inc., a Delaware corporation with its principal place of business in Jessup, Maryland.

10. Third-party defendant MSC is a global container shipping company and ocean common carrier headquartered at Chemin Rieu 12-14, CH-1208 Geneva, Switzerland, conducting business in the United States through Mediterranean Shipping Company (USA) Inc. Mediterranean Shipping Company (USA) Inc.'s office is located at 420 5th Avenue, 4th Floor, New York, New York 10018.

## FACTUAL BACKGROUND

11. ADG is a survivability company that provides government agencies, military, law enforcement, industrial providers, and first responders with a diverse portfolio of protective equipment that spans the entire survivability spectrum.

### A. ADG's efforts to supply personal protective equipment during the pandemic

12. In March 2021, ADG contracted with the U.S. Department of Health and Human Services (HHS) to supply the agency with over 18 million boxes of nitrile rubber gloves.

13. To fulfill the HHS contract, ADG contracted in June 2021 with a Thailand-based seller to purchase certain nitrile rubber examination gloves (the "Original Goods").

14. Between May and December 2021, ADG and McWilliams Collective, LLC (McWilliams) were parties to a Transportation Management Agreement under which McWilliams arranged the ocean transportation, customs brokerage, domestic transloading, and interstate trucking of the Original Goods.

15. McWilliams contracted with FTN to transport the Original Goods from Malaysia to the United States. In turn, FTN contracted with vessel-operating common carrier MSC to perform that ocean transportation.

16.     On November 4, 2021, the United States Customs and Border Protection (CBP) issued a Withhold Release Order (WRO) against the manufacturer of the Original Goods that prevented entry of 202 shipping containers of the Original Goods (the 202 WRO Containers).

17.     McWilliams was the importer of record of the 202 WRO Containers. McWilliams and its customs broker, Omega CHB International Inc. (Omega), informed ADG of the WRO.

**B.    FTN and MSC continue to impose charges despite the CBP WRO.**

18.     Following the WRO hold, MSC and FTN refused to extend the free time as to the 202 WRO Containers and continued to assess demurrage, detention, chassis charges, and per diem as to those 202 WRO Containers detained by CBP.

19.     ADG alleges on information and belief that 62 of the 202 WRO Containers remained at MSC's marine terminal, TTI.

20.     ADG alleges on information and belief that CBP instructed FTN to transport 135 of the 202 WRO Containers to Price Transfer, Inc. (Price), which is a CBP centralized examination station.

21.     ADG alleges on information and belief that a motor carrier that FTN hired—ITS Logistics (ITS)—and a subcontractor of ITS—MTK Logistics, Inc. (MTK)—held five of the 202 WRO Containers.

**C.    FTN makes unsupported payment demands and imposes liens.**

22.     In late March 2022, despite payment by ADG to McWilliams for ocean freight and related charges, FTN informed ADG that McWilliams failed to pay freight, demurrage, detention, chassis charges, and per diem charges related to the Original Goods.

23.     According to FTN, on May 16, 2022, and without notice to ADG, FTN filed two CBP Form 3485 lien notices with CBP: a general lien against 129 of the 202 WRO Containers at Price for $4,287,540.10 in freight and $5,586,880 in per diem charges; and a general lien against

66 of the 202 WRO Containers at TTI for $2,289,817.38 in freight and $3,231,745 in detention and demurrage charges, for a total of more than $14,000,000 (collectively, the Liens).

24. On May 24, 2022, ADG learned of the Liens when CBP informed Omega that ADG could not export the Cargo until the release of the Liens.

25. On June 1, 2022, FTN filed an action against ADG in the District of Maryland (Case No. 22-cv-1313) alleging non-payment of freight, demurrage, and other charges for 571 containers, including the 202 WRO Containers. FTN claimed that through May 31, 2022, the unpaid ocean freight and insurance charges were $15,387,550 and that the 202 WRO Containers had accrued storage, demurrage, and other charges exceeding $11,385,518.

26. At no time did FTN provide ADG with copies of any invoices for demurrage and detention. Instead, FTN provided copies of spreadsheets, e-mails, and invoices for ocean freight and insurance.

27. McWilliams also failed to provide ADG with information necessary to evaluate the Disputed FTN Charges, determine the location of WRO 202 Containers, and information necessary for ADG's exportation of the Original Goods.

28. At no time did FTN provide ADG with a copy of a negotiated rate arrangement (NRA) in support of the Disputed FTN Charges, notwithstanding that FTN's bills of lading for the 202 WRO Containers referred to an NRA number.

   **D.   ADG settles with FTN to avert continued charge accrual.**

29. McWilliams failed to mitigate or contribute to a settlement of FTN's lawsuit.

30. To obtain the release of the Liens and to avoid the accrual of additional charges and to export the subject cargo as quickly as possible, on July 22, 2022, FTN and ADG settled the lawsuit for $5,000,000. *See* Exhibit 2 (Exhibit 1 to FTN's Compl., ECF No. 8-1).

31. In exchange for ADG's payment of that amount, FTN released the Liens on August 15, 2022 and stipulated to dismiss FTN's claims against ADG with prejudice on August 22, 2022.

E.  **ADG settles with MSC to avert continued charge accrual.**

32.  In June 2022, before ADG settled with FTN, ADG, through counsel, contacted counsel for MSC to initiate settlement negotiations as to the WRO 202 Containers. But MSC did not respond to the request to meet with ADG to discuss settlement of MSC's demurrage, detention, chassis, and per diem charges.

33.  After the ADG-FTN settlement, FTN arranged a settlement conference with MSC on August 10, 2023. During and after that meeting, ADG and MSC negotiated a settlement of all WRO 202 Container charges, including demurrage, detention, chassis charges, and per diem charges (collectively, MSC's WRO 202 Container Charges).

34.  During the negotiations, MSC represented that the WRO 202 Container Charges included all chassis charges and per diem related to the 140 of the 202 WRO Containers that the parties believed were at Price (the 140 WRO Chassis).

35.  On August 29, 2022, ADG's counsel sent MSC's counsel a draft settlement agreement that would settle the dispute over the MSC WRO 202 Container charges, including the charges as to the 140 WRO Chassis.

36.  On August 30, 2022, FTN provided ADG and its counsel with a pro forma Excel invoice claiming FTN charges of $3,786,923.80 (the Additional FTN Charges), including ITS chassis charges of $2,793,925.00 (the Disputed ITS Chassis Charges), which ADG's counsel forwarded to MSC's counsel on the same day.

37.  ADG did not arrange the drayage from TTI to Price and had no knowledge of or visibility into the interchange of the 140 WRO Chassis.

38.  ADG's counsel sent e-mails to MSC's counsel between August 30, 2022, and August 31, 2022, putting MSC on notice of the Disputed ITS Chassis Charges.

39. Based on MSC's prior representations, on August 31, 2022, MSC and ADG settled the 202 WRO Container Charges, including the Disputed ITS Chassis Charges, for $5,750,000, through September 24, 2022. *See* Exhibit 3. ADG paid that amount to MSC.

40. In the ADG-MSC Settlement Agreement, MSC expressly represented that it was the only party in interest with respect to the "Charges" and agreed to indemnify ADG for any breach of that representation:

> **5. REPRESENTATION AS TO REAL PARTY IN INTEREST.** MSC states that it is the real party in interest and the only person with standing to seek the recovery of the Charges. MSC agrees to defend and indemnify ADG from and against a breach of the above representation, including as to any liabilities, claims, losses, costs, or expenses, including reasonable attorneys' fees.

41. The settled "Charges" embraced "per diem, chassis charges, demurrage, and detention through September 24, 2022"—the target date by which ADG intended to export the gloves, which would stop accrual of any further charges—including for all 140 WRO Chassis.

**F.   FTN and MSC hinder re-export of the WRO Containers.**

42. From August 30, 2022, to October 7, 2022, ADG arranged for the export bookings of the 202 WRO Containers on board multiple MSC vessels using FTN as its ocean transportation intermediary.

43. Throughout September and into October 2022, MSC unilaterally changed or extended FTN's bookings due to vessel delay and congestion at the Port of Los Angeles. And as late as September 26, 2022, MSC changed the booking from the MSC M/V Vita, voyage FV237R, to the MSC M/V Ravenna, voyage FV240R, with the port earliest return date of October 4, 2022, and cut-off date of October 6, 2022.

44. When ADG learned of the above changes, ADG requested MSC to resolve the Disputed ITS Chassis Charges before ADG would commit to the booking. ADG repeatedly requested MSC, FTN, and ITS to negotiate in good faith, to mediate, and to resolve the Disputed

7

ITS Chassis Charges. Despite ADG's best efforts, MSC, FTN, and ITS failed to resolve the Disputed ITS Chassis Charges and the dispute remains.

45. The Additional FTN Charges dramatically increased the projected cost of exportation. FTN's demand for payment of the Additional FTN Charges made exportation of the 202 WRO Containers commercially impossible for ADG.

**G.    FTN sues ADG again demanding payment for settled charges.**

46. FTN filed its latest lawsuit on August 15, 2023. *See* Exhibit 1.

47. FTN now alleges that ADG breached the FTN-ADG Settlement Agreement by, among other things, not paying alleged invoices from ITS.

48. On October 31, 2023, ADG demanded again that MSC defend and indemnify ADG on account of MSC's breach of its representation that it was "the real party in interest and the only person with standing to seek the recovery of the Charges" for the 140 WRO Chassis.

49. MSC again refused to comply with its obligation to defend and indemnify ADG against FTN's claims.

**FIRST CAUSE OF ACTION**
**Breach of Contract**

50. ADG realleges and incorporates by reference the foregoing paragraphs.

51. The MSC-ADG Settlement Agreement is a binding and enforceable contract between ADG and MSC.

52. Under the MSC-ADG Settlement Agreement, MSC "states that it is the real party in interest and the only person with standing to seek the recovery of the Charges." The "Charges" embraced "per diem, chassis charges, demurrage, and detention through September 24, 2022" for the WRO Containers.

53. Under the MSC-ADG Settlement Agreement, "MSC agrees to defend and indemnify ADG from and against a breach of the above representation, including as to any liabilities, claims, losses, costs, or expenses, including reasonable attorneys' fees."

54. MSC has breached its representation that "it is the real party in interest and the only person with standing to seek the recovery of the Charges."

55. ADG has satisfied all conditions and performed all of its obligations under the MSC-ADG Settlement Agreement that were not excused by reason of MSC's breach of contract.

56. Under section 5 of the MSC-ADG Settlement Agreement, ADG is entitled to recover its reasonable attorney fees and costs if it prevails.

## SECOND CAUSE OF ACTION
### Express Indemnification—Breach of the Duty to Defend

57. ADG realleges and incorporates by reference the foregoing paragraphs.

58. The MSC-ADG Settlement Agreement is a binding and enforceable contract between ADG and MSC.

59. Under the MSC-ADG Settlement Agreement, MSC "states that it is the real party in interest and the only person with standing to seek the recovery of the Charges." The "Charges" embraced "per diem, chassis charges, demurrage, and detention through September 24, 2022" for the WRO Containers.

60. Under the MSC-ADG Settlement Agreement, "MSC agrees to defend and indemnify ADG from and against a breach of the above representation, including as to any liabilities, claims, losses, costs, or expenses, including reasonable attorneys' fees."

61. MSC has breached its representation that "it is the real party in interest and the only person with standing to seek the recovery of the Charges."

62. MSC has failed to undertake its duty to defend ADG against FTN's claims despite FTN's claims being the direct result of MSC's breach of its representation.

63. ADG has satisfied all conditions and performed all of its obligations under the MSC-ADG Settlement Agreement that were not excused by reason of MSC's breach of contract.

64. ADG is entitled to defense costs from MSC, including for ADG's attorney fees, costs, expenses, and damages, that ADG has paid or incurred or will pay and incur in an amount to be proven in this action.

65. Under section 5 of the MSC-ADG Settlement Agreement, ADG is entitled to recover its reasonable attorney fees and costs if it prevails.

### THIRD CAUSE OF ACTION
### Express Indemnification—Breach of the Duty to Indemnify

66. ADG realleges and incorporates by reference the foregoing paragraphs.

67. The MSC-ADG Settlement Agreement is a binding and enforceable contract between ADG and MSC.

68. Under the MSC-ADG Settlement Agreement, MSC "states that it is the real party in interest and the only person with standing to seek the recovery of the Charges." The "Charges" embraced "per diem, chassis charges, demurrage, and detention through September 24, 2022" for the WRO Containers.

69. Under the MSC-ADG Settlement Agreement, "MSC agrees to defend and indemnify ADG from and against a breach of the above representation, including as to any liabilities, claims, losses, costs, or expenses, including reasonable attorneys' fees."

70. MSC has breached its representation that "it is the real party in interest and the only person with standing to seek the recovery of the Charges."

71. MSC has failed to undertake its duty to indemnify ADG against FTN's claims despite FTN's claims being the direct result of MSC's breach of its representation.

72. ADG has satisfied all conditions and performed all of its obligations under the MSC-ADG Settlement Agreement that were not excused by reason of MSC's breach of contract.

73. ADG is entitled to indemnity from MSC, including for ADG's attorney fees, costs, expenses, and damages, that ADG has paid or incurred or will pay and incur in an amount to be proven in this action.

74. Under section 5 of the MSC-ADG Settlement Agreement, ADG is entitled to recover its reasonable attorney fees and costs if it prevails.

### THIRD CAUSE OF ACTION
### Equitable Indemnification Against MSC

75. ADG realleges and incorporates by reference the foregoing paragraphs.

76. ADG alleges on information and belief that it is not responsible for the injuries or damages that FTN has alleged in its complaint. But if ADG were nevertheless found liable under any legal theory for any damages or injuries alleged in the complaint, then ADG alleges on information and belief that the fault or other actionable conduct or activity of MSC was active, primary, and affirmative, and that any fault or other actionable conduct or activity on the part of ADG, if any, was at most only passive, derivative, and secondary.

77. Accordingly, if ADG were to be held liable for all or any part of the claims that FTN has alleged, then ADG would be entitled to total or partial indemnification from MSC so that ADG could recover from them all sums that ADG must pay to FTN, or any sum over ADG's proportionate share of liability, if any.

78. Because of FTN's allegations, ADG has incurred or paid expenses for the defense of the above-captioned action, including attorney fees, court costs, expenses, and damages. ADG will also likely incur future attorney fees, court costs, expenses, and damages because of any judgment or settlement with any party to this action.

79. ADG is entitled to indemnity from MSC for ADG's attorney fees, court costs, expenses, and damages that ADG has paid or incurred and will pay or incur in an amount to be proven in this action.

## FOURTH CAUSE OF ACTION
### Contribution Against MSC

80. ADG realleges and incorporates by reference the foregoing paragraphs.

81. ADG alleges on information and belief that it is in no way responsible for the injuries or damages FTN has alleged in its complaint. But if ADG were nevertheless found liable under any legal theory for any damages or injuries alleged in the complaint, then ADG alleges on information and belief that the fault or other actionable conduct or activity of MSC was a substantial factor in causing FTN's damages and injuries, if any.

82. Because of FTN's allegations, ADG will sustain damages to the extent that it must pay any sums over its proportionate share of liability, if any, as the trier of fact may find.

83. Accordingly, if ADG were to be held liable for any part of the claims asserted against it by FTN, then ADG would be entitled to contribution by MSC in proportion to its share of the liability, and, as a result, ADG would avoid payment of any sums to FTN or any sum over ADG's proportionate share of liability, if any.

84. Because of FTN's allegations, ADG has incurred or paid expenses for the defense of the complaint in this action, including attorney fees, court costs, expenses, and damages. ADG will also likely incur future attorney fees, court costs, expenses, and damages because of any judgment or settlement in this action.

85. ADG is entitled to contribution from MSC for ADG's attorney fees, court costs, expenses, and damages that ADG has paid or incurred and will pay or incur in an amount to be proven in this action.

### PRAYER FOR RELIEF

WHEREFORE, ADG respectfully requests that the Court:

a. Enter a judgment against MSC in favor of ADG;

b. Declare that MSC has a duty to defend ADG against FTN's claims seeking recovery

of Charges;

      c.      Declare that MSC has a duty to indemnify ADG against FTN's claims seeking recovery of Charges;

      d.      Award ADG any available actual damages it has incurred in an amount to be proven;

      e.      Award ADG any available exemplary and punitive damages;

      f.      Award ADG its attorney fees, expenses, and costs incurred in defending the litigation with FTN;

      g.      Award ADG its attorney fees, expenses, and other costs for this action; and

      h.      Award ADG such other and further relief as the Court deems just and proper.

Dated: November 8, 2023                              Respectfully submitted,

                                                            /s/ *Sarah P. Hogarth*

                                                            Sarah P. Hogarth (No. 30278)
                                                            Llewelyn M. Engel (*pro hac vice*)
                                                            MCDERMOTT WILL & EMERY LLP
                                                            500 North Capitol Street NW
                                                            Washington, DC 20001
                                                            shogarth@mwe.com
                                                           lengel@mwe.com
                                                           (202) 756-8000

                                                           *Attorneys for Defendant*
                                                           *AirBoss Defense Group, LLC*